## PUPIN et al. v. MEISSNER.

(Court of Appeals of District of Columbia.  Decided February 5, 1923.)

No. 1541.

1. **Patents ☞91 (3)—Applicant filing after patent was issued must prove priority beyond a reasonable doubt.**

In interference proceedings, where the patent had been issued to the senior applicant prior to the filing date of the junior parties, it is incumbent on the junior parties to prove their case beyond a reasonable doubt.

2. **Patents ☞91 (4)—Evidence held not to show diligence between first disclosure and application.**

In interference proceedings, where it was undisputed that the junior applicants had made a full disclosure of the invention in a sketch by them, evidence *held* to sustain the finding of the Patent Office tribunals that they did not exercise diligence between the date of such disclosure and the filing of their application.

3. **Patents ☞90 (3)—Publication of disclosure held not to affect issue of diligence.**

The publication of an article containing a disclosure of the invention between the date it was first read and the filing of the application does not affect the question of diligence in reducing to practice, where it was recognized by counsel that such publication did not amount to a constructive reduction to practice.

Appeal from the Commissioner of Patents.

Interference proceedings between Michael I. Pupin and another and Alexander Meissner.  From concurrent decisions of the Patent Office tribunals, awarding priority to Meissner, Pupin and another appeal.  Affirmed.

William H. Davis, of New York City, for appellants.

H. E. Knight, of Washington, D. C., and Octavius Knight, of New York City, for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice.  [1] Appeal from concurrent decisions of the Patent Office tribunals in an interference proceeding, in which priority of invention was awarded the patentee Meissner, whose patent was granted prior to the filing date of Pupin and Armstrong.  Therefore it is incumbent upon the junior parties to prove their case beyond a reasonable doubt.

Meissner's application was filed June 2, 1915, and the claims of the issue, four in number, were taken from his patent.  In the oath accompanying his application he refers to two German applications involving the same subject-matter and filed there on April 9 and May 30, 1914.  The Patent Office found it unnecessary, as do we, to determine whether Meissner is entitled to constructive reduction to practice on these German applications, under the provisions of the International Convention.

The invention is of a highly technical character, and relates to a device for receiving radio signals in the form of high-frequency oscillations. The receiving device includes an amplifying relay of the vacuum tube repeater type, with means for superimposing upon the high-frequency oscillations audible low-frequency impulses. Under certain conditions the low-frequency impulses interfere with the reception of the high-frequency signals in telephone receivers, and the purpose of this invention is to prevent, or at least minimize, such interference. One way of securing this result is to interpose in the circuit, between the relay and the telephone receivers, an auxiliary device permitting the transmission of the high-frequency oscillations, but restraining or preventing the transmission of the low-frequency impulses. It is unnecessary to repeat the claims here, since there is no serious question as to their meaning.

Professor Armstrong, an instructor in electrical engineering and radio telegraphy in the Hartley Research Laboratory at Columbia University, testified that the "complete conception [of the invention] occurred some time prior to the middle of February, 1915"; that immediately thereafter he tested his system, and prepared a paper entitled "Some Recent Developments in the Audion Receiver," which "was delivered in New York on March 3, 1915." Before reading this paper he submitted it to Professor Pupin, his superior and coinventor, with whom it was discussed. The particular feature of this discussion was "a difficulty which had arisen in the operation of this receiver, which had theretofore prevented the reception of transatlantic signals by this method. This difficulty was due to the production of a continuous tone in the telephone receivers by the low frequency current circulating in the circuits of the modulating tube. * * * Professor Pupin made various suggestions regarding the elimination of this difficulty, and as a result of this discussion I evolved and tried a circuit for reducing this disturbance. This circuit is illustrated in a sketch which I made on March 16, 1915. The circuit here shown gave a great improvement in the reduction of this residual tone." The witness further stated that there still remained a residual tone, "which was troublesome on very weak signals, particularly if a low-frequency amplifier was used in connection with the detector."

Acting upon the suggestion of Professor Pupin, an artificial line between the modulating tube and the detecting apparatus was designed; but the length of time required for the completion of this auxiliary work does not definitely appear. It does appear, however, that the work was done in the laboratory. In response to a question calculated to elicit the information, the witness said:

"I am unable to recall this date definitely, but it was some time during the summer of 1915."

He further stated that he and Professor Pupin were engaged in other investigations during this time, resulting in the filing of three applications for patent by Professor Pupin on September 11, December 11, and December 31, 1915, and three applications by Pupin and Armstrong jointly, in addition to the one in interference; the dates

being September 17 and October 1, 1915, when two were filed. The witness further testified that he believed it was "some time in the end of October, 1915," when he and Professor Pupin instructed their attorneys to prepare a patent application, which was filed on February 10, 1916.

Professor Pupin's testimony is even less specific than that of Professor Armstrong. After testifying that the March 3, 1915, paper was submitted to and reviewed by him, he was asked whether Professor Armstrong discussed the alleged defect with him, and answered:

"Well, I don't recollect the discussion, but it would be the most natural thing to discuss with him, and undoubtedly I did discuss it."

In response to the question as to what, if any, suggestions were made by him, he said:

"I don't know when I discussed with him the desirability of a better filter, but I certainly discussed it with him some time after that date, when I first saw the manuscript of the paper of March, 1915, and considerably prior to our filing the application."

Asked why no application was filed until February of 1916, the witness replied:

"Because we were not successful in suppressing the local modulating low-frequency until we introduced a satisfactory pilot conductor."

Two other witnesses, Professor Cushman and a Mr. Liebowitz, a mechanical and electrical engineer, who worked in the laboratory during the period here involved, and who witnessed the Armstrong sketch of March 16, 1915, identified that sketch; but neither witness was asked as to the activity of the junior parties to this interference during that period.

There also was offered in evidence a booklet or quarterly publication, bearing date of September, 1915, and purporting to contain the "Proceedings of the Institute of Radio Engineers." In this publication is an article entitled "Some Recent Developments in the Audion Receiver," with a footnote reading as follows:

"Delivered before the Institute of Radio Engineers, New York, March 3, 1915, and before the Boston Section, April 29, 1915."

[2] The Patent Office found, and we concur in the finding, that the sketch of March 16, 1915, contained a full disclosure of every count of the issue. Indeed, the testimony of Professor Armstrong is to that effect, and in their brief counsel for appellants go even further, when they there contend that the conception of the invention was complete on March 3, 1915, and that thereafter—

"there was nothing to be done except to continue their experiments with a view to perfecting their invention to a point where its commercial utility would be assured."

We agree with the tribunals of the Patent Office that there is no evidence in the record warranting a finding of diligence on the part

of appellants between the date of the March 16th sketch and November 1st, when the preparation of an application was directed. It is significant that the two witnesses who were in a position to know what was done during that period were not questioned as to the activity of appellants. The application of Meissner was filed on June 2d, and appellants' inactivity continued for several months thereafter. In the circumstances of the case, this was too long an interval.

[3] The publication in September of the paper purporting to have been read in March cannot change the result, for at most it constitutes but cumulative evidence of a disclosure as of the date of the reading. Counsel for appellants evidently appreciated this, for in their brief they state:

"The sketch of March 16, 1915, itself is accompanied by brief explanatory notes referring to different portions of the circuits. By means of this sketch and the March 3, 1915, Institute publication any one skilled in the radio art would be able to set up and operate the invention defined in *all of the counts* of this interference."

In other words, counsel here recognize that the publication, standing alone, did not amount to a constructive reduction to practice. Moreover, that publication was three months subsequent to the filing of the Meissner application. We repeat that appellants have failed to sustain the burden of proof, and we therefore must affirm the decision of the Patent Office.

Affirmed.